578 F.2d 513
 FREDERICK L., a minor by his mother, Delores L., on behalf
of himself and all other similarly situated,
Delaware Valley Association for Children
with Learning Disabilities
(Intervening pltf. in D.C.)
v.
Arthur THOMAS, Individually and in his capacity as President
of the Board of Education of Philadelphia, Mrs. Edward
Oberholtzer, William Ross, Robert M. Sebastian, Augustus
Baxter, Mrs. Lawrence Bonnin, Philip Davidoff, George Hutt,
and Alec Washco, Jr., Individually and in their capacities
as members of the Board of Education of Philadelphia,
Matthew Costanzo, Individually and in his capacity as
Superintendent of Schools of the School District of
Philadelphia, Althea L. Cousins, Individually and in her
capacity as Director of Pupil Personnel and Counseling of
the School District of Philadelphia, Marechal-Neil E. Young,
Individually and in her capacity as Associate Superintendent
for Special Education of the School District of
Philadelphia, and the School District of Philadelphia, the
Commonwealth of Pennsylvania ex rel. Israel Packel, and John
C. Pittenger (Applicants for Intervention in D.C.).
Appeal of FREDERICK L.
 No. 77-1694.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 17, 1978.
Decided June 12, 1978.
 
 1
 Stephen F. Gold, Community Legal Services, Inc., Philadelphia, Pa., for appellant.
 
 
 2
 John M. Elliott, Lawrence D. Berger, Philadelphia, Pa., for defendants-appellees; Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., Robert T. Lear, Asst. Counsel, School District of Philadelphia, of counsel.
 
 
 3
 Before GIBBONS and HUNTER, Circuit Judges, and STAPLETON,* District Judge.OPINION OF THE COURT
 
 STAPLETON, District Judge:
 
 4
 Frederick L. brought this civil rights action on behalf of himself and "all children attending public schools within the City of Philadelphia who have specific learning disabilities and who are deprived of education appropriate to their special needs". He asserted a right to relief under the First, Ninth and Fourteenth Amendments to the United States Constitution and under the Pennsylvania School Code. 24 Purd.Stat. §§ 13-1371, et seq. This Court previously affirmed holdings of the court below (1) that abstention on the issues presented by the class demand for injunctive relief would be inappropriate and (2) that the Pennsylvania School Code requires the defendants to identify learning disabled children and to provide them with an appropriate education. Frederick L. v. Thomas, 557 F.2d 373 (1977), affirming 419 F.Supp. 960 (E.D.Pa.1976). The defendants have been ordered to identify all learning disabled children and proceedings concerning further relief for the class are ongoing.
 
 
 5
 The present appeal is from an order staying further proceedings relating to Frederick L.'s individual claim for damages until he has presented his state law based damage claim to a court of the Commonwealth of Pennsylvania. This abstention decision was based on the District Court's view that (1) the plaintiff's damage claim posed an unclear issue of state law, that is, whether 24 Purd.Stat. § 13-1371 creates a private right of action for damages, (2) this issue involved a sensitive area of special state concern, (3) a decision by a state court in plaintiff's favor might obviate the necessity of deciding plaintiff's constitutionally based claims, and (4) any delay occasioned by affording the state court an opportunity to act would not irreparably injure the plaintiff. Relying on Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the District Judge exercised his discretion in favor of abstention, but reserved jurisdiction so that the plaintiff's constitutional claims could be adjudicated in the District Court if that became necessary.
 
 
 6
 Plaintiff maintains that abstention was improper because, in his view, the constitutional questions are not "premised" on the pendent claim for damages, there is no unclear question of state law, resolution of the pendent claim will not avoid a decision on the constitutional claims, abstention in this context will not serve the policies underlying the abstention doctrine, and the request for abstention was untimely.
 
 
 7
 Before evaluating these contentions, we must first determine whether we have jurisdiction to conduct the review which the plaintiff seeks. He maintains that the lower court's abstention order is a "final" one under the collateral order doctrine and that, accordingly, jurisdiction lies under 28 U.S.C. § 1291. Primary reliance is placed on a footnote comment of the Supreme Court in Idlewild Bon Voyage Liquor Corp. v. Epstein.[1] Additional support is said to exist in Professor Moore's treatise[2] and a number of Circuit Court opinions which cite the Idlewild footnote.[3]
 
 
 8
 The existence of Section 1291 jurisdiction in a situation of this kind is far more debateable than the plaintiff would have us believe. The per curiam opinion in Idlewild does make the following observation about an order implementing a decision to abstain:
 
 
 9
 The Court of Appeals properly rejected the argument that the order of the District Court "was not final and hence unappealable under 28 U.S.C. §§ 1291, 1292," pointing out that "(a)ppellant was effectively out of court".
 
 
 10
 But this statement was made in the context of a case in which the order appealed from constituted a denial of injunctive relief and appellate jurisdiction was clear under 28 U.S.C. § 1292(a).[4] In contrast, the order before us impacts only on a claim for monetary damages and, in this context, Idlewild is not controlling. Moreover, as a single panel of this Court, we would not consider ourselves free to premise jurisdiction on Idlewild's cryptic reference to Section 1291 without satisfactorily distinguishing the decisions of this Court in Cotler v. Inter-County Orthopaedic Ass'n, 526 F.2d 537 (3rd Cir. 1975) and Arny v. Philadelphia Transportation Co., 266 F.2d 869 (3rd Cir. 1959). In each instance, this Court held that an order staying a federal court suit until final resolution of a pending, related, state litigation was not appealable under Section 1291.
 
 
 11
 It is necessary, however, for us to pursue an analysis of Section 1291 and the collateral order doctrine. We are in agreement that appellate review should be available to one in plaintiff's position and that we may undertake that review pursuant to 28 U.S.C. § 1651. This Court held in Texaco, Inc. v. Borda, 383 F.2d 607 (3rd Cir. 1967) that "the remedy of mandamus . . . specifically extends to review of a trial court's grant, or refusal, of a stay of proceedings". 383 F.2d at 608. The Cotler decision and United States v. Mellon Bank N.A.[5] also support this view.[6]
 
 
 12
 Turning to the merits, we believe this Court's original opinion in this case offers substantial guidance in evaluating plaintiff's first two grounds for relief. As he correctly points out, the "classic" case for application of the Pullman doctrine involves a constitutional attack on a state statute under circumstances where one possible construction of the statute would avoid or substantially alter the constitutional issue. But we recognized in our initial opinion that Pullman abstention is not limited to this classic case:
 
 
 13
 At the outset of our abstention analysis, we must take cognizance of the fact that the litigation at hand does not present an "orthodox" abstention situation. In a recent decision, the Supreme Court described Pullman cases as those where "a federal constitutional claim is premised" on an unclear state law issue. The constitutional issue in the instant case is not, in the strict sense, "premised" upon a state law question. This is so since the alleged constitutional defects in the District's educational programs will exist, theoretically, regardless of the interpretation placed upon the state statutes or regulations.
 
 
 14
 Nonetheless, we believe that the facts of this case place it within the general ambit of Pullman. The constitutional issue is accompanied by a pendent state law claim. And even though the two problems are not inextricably intertwined, resolution of the state law claim might make it unnecessary to confront the federal constitutional question. Further, an incorrect interpretation of state law might arguably interfere with important state policies.
 
 
 15
 557 F.2d 373 at 383.
 
 
 16
 The same observations are appropriate in the context of abstention on the issue of plaintiff's right to damages under the School Code. While it is not contended that a resolution of this issue one way or the other will eliminate or alter the constitutional issues, as a practical matter, a decision in plaintiff's favor on his state claim "might make it unnecessary to confront the federal constitutional question(s)."[7] Moreover, we agree with the trial judge that the implication of a right to damages for deficient performance of a state school system is a matter which would have a serious impact in an area of peculiar state interest.
 
 
 17
 Having concluded that the facts before us place this situation "within the general ambit of Pullman ", the remaining question is whether the trial judge abused his discretion in weighing the advantages and disadvantages of abstention and deciding to invoke the Pullman doctrine. As we stressed in our earlier opinion, such a decision must stand unless we conclude that there has been an abuse of discretion. We do not so conclude.
 
 
 18
 The trial court was correct in concluding that plaintiff's right to damages as a result of defendants' failure to comply with 24 Purd.Stat. § 13-1372(3) and (4) is not clear under existing Pennsylvania case law. As plaintiff concedes, there is no Pennsylvania case which considers whether a private party can predicate a cause of action at law on a breach of the School Code. Nor do we believe the outcome becomes any easier to predict when one states the issue in terms of whether plaintiff has a cause of action for negligence in which the standard of care would be defined by the provisions of Section 13-1372. While Pennsylvania subscribes to the doctrine of negligence per se and her courts have repeatedly relied upon Section 286 of the Restatement of Torts, Second, this does not mean that the breach of every statutory duty imposes damage liability in that state. Clearly it does not. See, e. g., Manning v. Andy, 454 Pa. 237, 310 A.2d 75 (Pa.Supr.Ct.1973); 2 Restatement, Torts, 2d § 287-8. The doctrines of per se negligence and civil liability implied from statute, though theoretically distinct, are closely related[8] and the root issue would seem to us to be the same under either analysis: Should Section 13-1372, when considered in the context of the School Code as a whole, be applied solely as a definition of the responsibilities of School Boards and their employees to the State and its citizens as a whole or is it appropriately applied to impose and measure a legal duty on their part to pay compensation for deficiently educated children with learning disabilities? As we have said, we consider the answer to such a question unclear under existing Pennsylvania law.
 
 
 19
 Thus, the trial court was faced with a situation in which abstention would serve the dual purpose of permitting the Courts of Pennsylvania to decide an unclear question of state law in an area of particular state concern and of avoiding a decision on several federal constitutional questions unless and until it became clear that they must be decided. These are among the interests which the abstention doctrine was designed to serve. Having recognized these advantages, the trial judge then weighed them against possible injury to the plaintiff from any delays which might be occasioned by a decision to abstain. In this connection, he noted that the situation before him was different from that in which he had earlier refused to abstain. Delay in the injunctive phase of the case might well have caused further irreparable injury to children with learning disabilities. Nothing in the record, however, suggested that delay in the adjudication of plaintiff's damage claim would cause any additional injury to him. On this basis, the trial judge concluded that the balance of relevant interests favored abstention. This was a permissible judgment.
 
 
 20
 Finally, we conclude that defendants' application for abstention on plaintiff's damage claim was not untimely. Defendants' motion was made as soon as plaintiff began to press forward with his individual damage claim. Prior to that time, the activity in the suit had quite properly centered around the class claim for injunctive relief. If that claim had been rejected, there would have been no need for consideration of the damage claim by any court. The trial judge did not abuse his discretion in entertaining a motion to abstain when it first became apparent that the individual damage claim would have to be litigated.
 
 
 21
 We decline to order that the District Court adjudicate plaintiff's damage claim without delay. We do direct that the case be remanded for further proceedings if they are necessary after the state court adjudication of his state law claim.
 
 GIBBONS, Circuit Judge, dissenting:
 
 22
 Frederick L., the named plaintiff in this class action, commenced it in January, 1974. The complaint alleges federal constitutional violations as well as a pendent state law claim for violation of 24 P.S. § 13-1371 et seq. After extensive pretrial discovery and only ten days before the scheduled trial, the Commonwealth, which had intervened as a defendant, filed a motion that the district court abstain. The district court refused to postpone the trial of the class action for injunctive relief and filed an opinion after that trial in which it explained its decision not to abstain. Frederick L. v. Thomas, 408 F.Supp. 832, 837 (E.D.Pa.1976). Thereafter, it determined that the defendant school district had violated the duties imposed on it by state law. Frederick L. v. Thomas, 419 F.Supp. 960 (E.D.Pa.1976). In that opinion, filed August 2, 1976, the district court followed the direction of Hagans v. Lavine, 415 U.S. 528, 546, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), and refrained from deciding the federal constitutional issues which were the basis of its subject matter jurisdiction. An injunction issued, and an interlocutory appeal was taken to this court pursuant to 28 U.S.C. § 1292(a)(1). On June 17, 1977, we affirmed, rejecting the defendants' contention that the district court should have abstained from adjudicating the pendent state law claim. Frederick L. v. Thomas, 557 F.2d 373 (3d Cir. 1977). Meanwhile, the lawsuit was still pending in the district court with the named plaintiff pressing a claim for monetary and other relief. On March 28, 1977, more than three years after the complaint was filed, the district court entered the order appealed from. It denied the defendants' motion to dismiss the case, but ordered that all further proceedings in the district court relating to the individual claim of Frederick L. be stayed for the purpose of allowing him "to seek a determination of his claims from a court of the Commonwealth of Pennsylvania."
 
 
 23
 I agree that we have mandamus jurisdiction to review abstention orders and that we should exercise it in this case. But I wholeheartedly disagree with the enormous extension of the Pullman doctrine which the majority opinion accomplishes. I would direct the district court to proceed with the disposition of the entire lawsuit.
 
 
 24
 In no case that I know of has Pullman abstention produced any but doleful consequences to the litigant who resorted to a federal forum. In Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944), the Supreme Court ordered abstention. Seven years later, it finally decided the case on the merits. Spector Motor Serv., Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951). The benefit to the federal court from the enlightenment offered by the state court in that case was, to me at least, imperceptible. In United States v. Leiter Minerals, Inc., 381 U.S. 413, 85 S.Ct. 1575, 14 L.Ed.2d 692 (1965), the case was dismissed as moot eight years after abstention was ordered. I will not attempt here a complete catalogue of the procedural horrors which have grown out of Pullman. One illustration in this circuit is typical. In November, 1973, in Consumers Oil Corp. v. Phillips Petroleum Co., 488 F.2d 816 (3d Cir. 1973), when I was less experienced with the extent to which the Pullman device could be a trap for the unwary or unfortunate, I was a member of a panel which ordered abstention, with retention of jurisdiction, while the parties resorted to a New Jersey court for an interpretation of the New Jersey Franchise Act. Meanwhile, the defendant was directed to continue doing business with the plaintiff. The parties made an effort to comply with our mandate by resorting to state court, but the Superior Court of New Jersey declined to decide part of a lawsuit, and the proceeding filed there never went to trial. On November 19, 1974, the plaintiff was back before us with a motion to vacate that part of our judgment which required resort to the New Jersey courts. After briefing on the motion, a panel of this court on January 9, 1975, entered an order relieving the parties of the obligation to resort to the state courts and directing the district court to proceed with the case. A petition for rehearing on our January 9, 1975 order delayed the matter until February 7, 1975, when we denied it. Our abstention order accomplished nothing but delay and expense.
 
 
 25
 In this case, it can be anticipated with some confidence that Frederick L. will encounter similar difficulties. He will be required to go to a Pennsylvania court and ask it to accept a lawsuit in which violation of the state statute by the defendants and the steps which the defendants should have been taking under it are established by a non-final federal judgment. He will be asking the Pennsylvania court to do no more than rule what money damages should be paid for the violations which the district court found. The Commonwealth and the other defendants have contended throughout that there were no such violations. A state court might well agree, were it free to examine the liability question. Such a state court would have to be unusually accommodating to sit as a master to determine the damages part of a lawsuit, while accepting the federal court's interpretation of the scope of the duty imposed by its own statute. I fear that we will have a repeat of the Consumers Oil Corp. scenario.
 
 
 26
 Moreover, despite the majority's assurance that abstention here will avoid the decision of a federal constitutional issue, I do not agree that this fundamental purpose of the Pullman device will be achieved in this case. A § 1983 claim remains to be adjudicated. If no damages are awarded in the state forum, that claim will be litigated in the federal forum. Even if a state court takes part of this lawsuit and awards some damages, Frederick L. will press his § 1983 claim not only for a different measure of damages, if he is dissatisfied with the amount, but also for punitive damages. No one has suggested that punitive damages would be available under state law for the violation which the district court found. Since it seems virtually certain that Frederick L. will be back in the district court pressing his § 1983 claim, not only will the constitutional issue have to be resolved, but its resolution will be complicated by the question of the res judicata effect of the state determination of Frederick L.'s injury. If that determination is res judicata, then Frederick L. will have been deprived of an adjudication of that issue in the federal forum litigating liability under § 1983.
 
 
 27
 Finally, I cannot see why the damage question in this case presents any greater difficulty with respect to the application of Section 286 of the Restatement of Torts, Second, which Pennsylvania applies, than it does in hundreds of negligence cases with which the district courts, in their diversity jurisdiction, deal routinely. It is a novel proposition that a federal court adjudicating a state law negligence claim must, when asked to apply a standard of care defined in a state statute, wait until some state court has first applied the statute in a similar case. There is nothing unclear in the law of Pennsylvania about Section 286, and the district court is asked to do no more than apply it. Such an application involves no intrusion into a sensitive area of state law. That intrusion took place when the court determined that state law was violated and ordered class relief.
 
 
 28
 Enlarging the unfortunate Pullman doctrine so as to permit splitting lawsuits into two proceedings, one concerned with the violation and injunctive relief and the other concerned with damages, and sending the latter to a state court, can only be justified on the principle that two, or perhaps three, lawsuits are better than one. Such a way of conducting its business can only bring a court into disrepute in the eyes of the people, who already complain with justification that lawyers and judges have made things unnecessarily complicated. I would hold that one lawsuit was enough and would therefore order the district court to vacate its partial stay.
 
 
 
 *
 Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 370 U.S. 713, 715, n.2, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962)
 
 
 [2]
 9 Moore, Federal Practice, P 110.20(4.-2) at 251 (2d ed. 1975)
 
 
 [3]
 Druker v. Sullivan, 458 F.2d 1272 (1st Cir. 1972); Drexler v. Southwest DuBois School Corp., 504 F.2d 836 (7th Cir. 1974); Indiana State Employees Ass'n, Inc. v. Boehning, 511 F.2d 834 (7th Cir.) reversed on other grounds 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975); Moses v. Kinnear, 490 F.2d 21, 24 (9th Cir. 1974)
 
 
 [4]
 The opinion of the Court of Appeals in Idlewild focused on the facts giving rise to Section 1292 jurisdiction:
 Appellees' argument that this order was not final and hence unappealable under 28 U.S.C. §§ 1291, 1292 is not well taken. No parallel state actions were pending and there was no state adjudication to await. There was nothing left to be done in the federal courts because the action there had been for all intents and purposes concluded. Appellant was effectively our of court any action on its prayer for injunctive relief was indefinitely postponed under these circumstances. There is no bar on this ground to appealability. See Glen Oaks Utilities, Inc. v. City of Houston, 5 Cir., 1960, 280 F.2d 330.
 Idlewild Bon Voyage Liquor Corporation v. Rohan, 289 F.2d 426, 428 (2nd Cir. 1961) (emphasis added). Each of the post-Idlewild cases relied upon by plaintiff is likewise explainable by reference to Section 1292.
 
 
 [5]
 545 F.2d 869 (3rd Cir. 1976)
 
 
 [6]
 While an application for a writ of mandamus has not been directed to the trial judge as required by Rule 21(a) of the Federal Rules of Appellate Procedure, in light of our disposition of the abstention issue, we conclude that this does not preclude the exercise of our mandamus jurisdiction. Cf. Rule 21(b), Fed.Rules of App.Proc
 
 
 [7]
 While plaintiff insists that the measure of damages in connection with his federal claims and his state claim differ, if he has a meritorious state claim, the damage law of Pennsylvania would not appear to bar him from recovering each category of damage to which he lays claim. Nothing in the record gives reason to believe that plaintiff will be entitled to more damages if his constitutional claims are established than if his recovery rests entirely on his state claim
 
 
 [8]
 Most formulations of the standards for implying a private cause of action center on the presence or absence of a legislative intent to impose civil liability. In theory, at least, application of the negligence per se doctrine represents a judicial policy judgment independent of legislative intent with respect to the imposition of civil liability. Both, however, address the question of whether the policy behind the legislative enactment will be appropriately served by using it to impose and measure civil damage liability. 2 Restatement, Torts 2d §§ 285-288; Prosser, Torts, § 36 (4 ed. 1971); 2 Harper & James, Torts, § 17.6 (1956)