711 F.2d 1208
 19 ERC 1751, 13 Envtl. L. Rep. 20,792
 HOVSONS, INC., a New Jersey corporation; the Coalition to
Save Agriculture, a New Jersey corporation; the Coalition
For the Sensible Preservation of the Pinelands, an
unincorporated association; Folsom Township, a municipal
corporation of the State of New Jersey; Woodland Township,
a municipal corporation of the State of New Jersey, Plaintiffs
and
Marvin F. Matlack and Shirley Ann Matlack, Pineland
Landowners, individually and on behalf of their minor
children, Pamela and Desiree; Pineland Landowners Defense
Fund, Inc., a New Jersey corporation; Board of Education of
Washington Township, a corporate entity under the laws of
the State of New Jersey; and Board of Education of Woodland
Township, a corporate entity under the laws of the State of
New Jersey; Township of Lacey, a municipal corporation of
the State of New Jersey; and Lake Lenape Land Co., a
corporation of the State of New Jersey,
Plaintiffs-Intervenors, Appellants
v.
The SECRETARY OF the INTERIOR OF the UNITED STATES of
America, Defendant
and
State of New Jersey; the Pine Barrens Coalition; the New
Jersey Audubon Society; the Environmental Defense Fund,
Inc.; the Natural Resources Defense Council, Inc.; Friends
of the Earth; the Sierra Club; the National Parks and
Conservation Association; the American Rivers Conservation
Council; and the National Wildlife Federation,
Defendant-Intervenors, Appellees.
 No. 81-2580.
 United States Court of Appeals,
Third Circuit.
 Argued June 24, 1982.
Decided July 13, 1983.
 
 Paschon, Feurey & Kotzas, Robert V. Paschon (argued), Toms River, N.J., for appellant, Hovsons, Inc., et al.
 The Mid-Atlantic Legal Foundation, Myrna P. Field, Joseph W. Marshall, III, Philadelphia, Pa., for appellants, Matlack, et al.
 Hiering, Gilmore & Monahan, George R. Gilmore (argued), Toms River, N.J., for appellants, Township of Lacey and Lake Lenape Land Co.
 W. Hunt Dumont, U.S. Atty., Jerome B. Simandle, Asst. U.S. Atty. (argued), Trenton, N.J., for appellee, Secretary of the Interior.
 Irwin I. Kimmelman, Atty. Gen. of N.J., James J. Ciancia, Asst. Atty. Gen., Richard M. Hluchan, Deputy Atty. Gen., John M. Van Dalen, Deputy Atty. Gen. (argued), Trenton, N.J., for appellee, State of N.J.
 James T.B. Tripp (argued), New York City, for appellee, The Environmental Defense Fund, Inc.
 Lawrence D. Ross, Bessler, Plotkin & Ross, Morristown, N.J., for appellees, The Environmental Defense Fund, Inc.; The Natural Resources Defense Council; Friends of the Earth; The Sierra Club; The Nat. Parks and Conservation Ass'n; The American Rivers Conservation Council; and The Nat. Wildlife Federation.
 Matthew P. Boylan, Lowerstein, Sandler, Brochin, Kohl, Fisher & Boylan, Roseland, N.J., for appellees, The Pine Barrens Coalition, and The N.J. Audubon Soc.
 Sarah Chassis, Jane Bloom, New York City, for appellee, The Natural Resources Defense Council.
 Before GARTH and HIGGINBOTHAM, Circuit Judges, and FULLAM, District Judge.*OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 I. PROCEEDINGS BELOW
 
 1
 This is a suit by a number of plaintiffs who allege that they are aggrieved by actions of the State of New Jersey and the Secretary of the Interior of the United States, and who together have approved and adopted New Jersey's "Comprehensive Management Plan" (CMP) for the Pinelands area of New Jersey. The Pinelands National Reserve was created by Congress in the National Parks and Recreations Act of 1978, ("the Act"), 16 U.S.C. § 471i (Supp.1982),
 
 
 2
 (1) to protect, preserve and enhance the significant values of the land and water resources of the Pinelands area;
 
 
 3
 (2) to encourage and assist the State of New Jersey and its units of local government in the development of a comprehensive management plan for the Pinelands area in order to assure orderly public and private development in the area ....
 
 
 4
 (3) to provide, during the development of this comprehensive plan, Federal financial assistance for the acquisition of lands in the Pinelands area that have critical ecological values which are in immediate danger of being adversely affected or destroyed ....
 
 
 5
 Pub.L. 95-625, Title V, § 502, Nov. 10, 1978, 92 Stat. 3492, 16 U.S.C. § 471i(b).
 
 
 6
 Each of the plaintiffs is an owner or user of property in the Pinelands, or in the case of each of the plaintiff municipalities, an agency which taxes Pinelands property. New Jersey's CMP undeniably restricts most development in the Pinelands and restricts a great deal of land in the Pinelands to specified, fairly narrow uses. The plaintiffs allege that they have been harmed by those restrictions and have sought to invalidate them. Some of the plaintiffs have challenged the effects of the CMP in various other administrative and judicial proceedings in New Jersey.
 
 
 7
 This action challenges the preparation, approval and effects of the CMP and alleges various deficiencies in the environmental impact statement (EIS) upon which it is based. The importance of the EIS is that the National Environmental Policy Act, 42 U.S.C. § 4321, et seq., (NEPA), requires a legally sufficient EIS before federal funds may be disbursed pursuant to "any major Federal action funded under a program of grants to States." 42 U.S.C. § 4332(2)(D). The federal Pinelands Act provides for federal funding to assist New Jersey's implementation of its CMP. 16 U.S.C. § 471i(k).
 
 
 8
 Count I of the complaint charges various violations of NEPA, specifically, that the EIS upon which the Secretary based his approval of the CMP was deficient under 42 U.S.C. § 4332(2)(C). The EIS was allegedly deficient because it was based on a preliminary draft of the CMP; because it did not adequately describe and analyze the social and economic impact of the CMP; because it did not set forth in sufficient detail the data, methodology, and standards on which it was based; and because it failed adequately to address alternatives to the CMP. The plaintiffs seek preliminarily and permanently to enjoin the Secretary from approving the CMP (and hence from authorizing the expenditure of federal funds for the Pinelands under 16 U.S.C. § 471i(k)) until a legally sufficient EIS is prepared.
 
 
 9
 Count II of the complaint alleges that the Secretary failed to adequately consider various factors set forth by Congress in the federal Pinelands Act that must be considered before federal funding can be approved. Those factors include the following: whether the CMP provides for the greatest possible use of police power; whether the state allowed sufficient public participation in the preparation of the CMP; whether the CMP would be implemented promptly; and whether the CMP adequately provides for federal representation, for protection of the Pinelands National Reserve, for the national defense mission, and for continuing state oversight. Count II includes a prayer for preliminary and permanent injunctive relief to prevent the Secretary from approving and funding the CMP until the Secretary has complied with 16 U.S.C. § 471i(g)(2).
 
 
 10
 Count III alleges that the CMP constitutes a taking of the plaintiffs' property for public use without just compensation, in violation of the United States Constitution and state and federal law. The plaintiffs seek an injunction requiring the Secretary and the state to pay for any such property wrongfully taken, and to withhold approval and implementation of the CMP until the unconstitutional takings have ceased.
 
 
 11
 The district court denied all preliminary injunctive relief and thereafter, by order dated July 14, 1981, granted partial summary judgment on the merits in favor of the defendants on Counts I and II. Hovsons, Inc. v. Secretary of the Interior, 519 F.Supp. 434 (D.N.J.1981). In the same order, the district court abstained from decision on Count III in reliance on Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and stayed proceedings on the claim pending resolution of state administrative and judicial proceedings. The court specifically retained jurisdiction over Count III.
 
 
 12
 The plaintiffs have appealed to this court challenging the entry of summary judgment on Counts I and II, seeking a remand for trial on those claims, and seeking to overturn the district court's decision to abstain on Count III. We affirm.
 
 II.
 
 13
 Before reaching the merits, we must determine two preliminary issues. The first is whether this court has jurisdiction of the appeal, and the second is whether counsel for one of the appellants should be disqualified.
 
 A. Jurisdiction
 
 14
 When this appeal was argued there was a substantial question as to whether the appeal was from a judgment which was "final" for purposes of 28 U.S.C. § 1291. Only two of the three counts in plaintiffs' Complaint were encompassed within the grant of partial summary judgment. The district court had stayed the remaining count in the exercise of a Pullman-type abstention, and there was authority in this circuit to the effect that such orders are not final and appealable under 28 U.S.C. § 1291. See Brace v. O'Neill, 567 F.2d 237 (3d Cir.1977); Cotler v. Inter-County Orthopaedic Ass'n, P.A., 526 F.2d 537 (3d Cir.1975); Arny v. Philadelphia Transport Company, 266 F.2d 869 (3d Cir.1959). Since it appeared probable that the Supreme Court would shortly render a definitive decision on the appealability, under 28 U.S.C. § 1291, of Pullman-type abstentions and stay orders (the court having recently granted certiorari to consider the question), decision of this appeal was deferred.
 
 
 15
 On February 23, 1983, the Supreme Court decided Moses H. Cone Memorial Hospital v. Mercury Construction Corp., --- U.S. ----, 103 S.Ct. 927, 74 L.Ed.2d 765 (U.S.1983), holding that when a district court enters a stay of proceedings for the purpose of requiring the case to be litigated in a state forum, such orders are final and appealable under 28 U.S.C. § 1291.[1] It is therefore now clear that we have jurisdiction over this appeal.
 
 B. Motion to Disqualify Counsel
 
 16
 After this appeal was filed, the Secretary of the Interior moved to disqualify appellants' counsel. The Secretary alleges that appellants' counsel, Robert V. Paschon, is currently representing conflicting interests. Mr. Paschon is the senior partner in the firm of Paschon, Feurey and Kotzas of Toms River, New Jersey, in which capacity he represents the appellants. He is also Staff Judge Advocate on the staff of the Commander of the New Jersey Air National Guard in which capacity he serves part time as a legal advisor to the New Jersey Air National Guard. The Secretary's motion alleges that "Mr. Paschon's official legal duties [as Staff Judge Advocate] have included participation in meetings and discussions as a representative of the New Jersey Air National Guard regarding various Pinelands Plan issues .... [and that] Mr. Paschon, acting in his official capacity, has participated in meetings with the Pinelands Commission and its staff regarding the formulation of the [Comprehensive Management] Plan and its impact upon the defense mission." Mr. Paschon has denied that he participated in any meetings concerning the impact of the CMP on the defense mission of the United States, and categorically denies that he has represented any conflicting interests.
 
 
 17
 The relevance of the "defense mission of the United States" to this case is that 16 U.S.C. § 471i(g)(2)(G) requires the Secretary of the Interior to consider whether "the national defense mission of the military installations within, contiguous or adjacent to the Pinelands National Reserve has been adequately provided for" before approving federal funding for the CMP. Of course, the national defense mission is only one of a great many factors the Secretary was obliged to consider before approving the CMP[2], but it was also a factor that the plaintiffs alleged the Secretary did not consider. In small part they seek to invalidate the Secretary's approval of the CMP for that reason. The appellees object to Mr. Paschon's allegedly evaluating the defense mission for the United States as a Staff Judge Advocate and thereafter suing the United States for its failure adequately to evaluate the defense mission.
 
 
 18
 The Secretary alleges[3] that Mr. Paschon's conduct violates Disciplinary Rule 9-101(B) of the American Bar Association Code of Professional Responsibility, which provides:
 
 
 19
 A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.
 
 
 20
 Disciplinary Rule 9-101(B) complements, and indeed reinforces, DR 5-105(B) of the Code, which provides in pertinent part:
 
 
 21
 A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests ....
 
 
 22
 We assume, for purposes of argument only[4], that Mr. Paschon has violated both DR 9-101(B) and DR 5-105(B). Nevertheless, we do not believe disqualification is appropriate, even assuming that the Code has been violated.
 
 
 23
 We observed in United States v. Miller, 624 F.2d 1198, 1201 (3d Cir.1980):
 
 
 24
 Although disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic. See Church of Scientology v. McLean, 615 F.2d 691, 693 (5th Cir.1980); Central Milk Producer's Coop. v. Sentry Food Stores, Inc., 573 F.2d 988, 991 (8th Cir.1978); International Electronics Corp. v. Flanzer, 527 F.2d 1288, 1293 (2d Cir.1975). We have noted that the district court 'has a wide discretion in framing its sanctions to be just and fair to all parties involved.' IBM v. Levin, 579 F.2d 271, 279 (3d Cir.1978).
 
 
 25
 This case is a rare but good example of when disqualification would neither be just nor fair to the parties involved.
 
 
 26
 Initially, we note that the Secretary is lukewarm, at best, about pressing his motion. At oral argument counsel for the Secretary, while not waiving the motion, retreated from it somewhat:
 
 
 27
 I don't want to delay resolution of this appeal, we do feel it's an important matter .... I certainly feel strongly that Mr. Paschon should not be participating, but since he is here and since everyone's here and since the court has the briefs and has the issues I'm very reluctant to object, and I won't object, to Mr. Paschon participating today. I would only point out that if Mr. Paschon decides to go into the specific issue of the impact upon the military mission in the Pinelands, that that might well compound the mischief and the conflict we've attempted to point out to the court in our motion.
 
 
 28
 Second, we share the district court's concern about "the questionable nature of plaintiffs' standing" to raise objection to the Secretary of the Interior's consideration of the national defense mission. 519 F.Supp. at 450. Even assuming that a private plaintiff could suffer some "distinct and palpable injury to himself," Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), because of the Secretary's failure to consider whether the CMP adequately provided for the national defense mission, none of the allegations made by these plaintiffs in this case suggests such injury. Thus, with respect to this single, narrow, alleged violation of the statute, the plaintiffs have raised only a "generalized grievance shared in substantially equal measure by all or a large class of citizens." Warth v. Seldin, 422 U.S. at 499, 95 S.Ct. at 2205. In our view, they have not demonstrated their standing to object to the Secretary's alleged failure to fulfill his statutory duty.
 
 
 29
 The reason that we have addressed the plaintiffs' standing is that their absence of standing is an important factor in assessing the interests at stake in our consideration of the Secretary's motion to disqualify. Our conclusion on the plaintiff's lack of standing to challenge the Secretary's consideration of the national defense mission vitiates any harm that the United States might have suffered by reason of a conflict. Mr. Paschon's governmental employer, Major General Francis R. Gerard, of the New Jersey Air National Guard, submitted an affidavit in opposition to Mr. Paschon's disqualification, which affidavit denied the existence of a conflict, and from which we can infer that he does not view Mr. Paschon's alleged conflict to be detrimental to the Air National Guard. Nor has the Secretary of the Interior suffered any prejudice from the alleged conflict, since the plaintiffs' challenge to the Secretary's consideration of the defense mission is effectively a nullity. Mr. Paschon's arguments on behalf of the plaintiffs in no way eroded whatever contribution he, as Staff Judge Advocate, may have made to the federal government's assessment of the national defense mission.
 
 
 30
 Finally, the lack of substantive merit in the plaintiffs' claims in Counts I and II, coupled with the tendency of pending litigation to impede the implementation of governmental programs, strongly militates in favor of a resolution of the disqualification question now rather than later. We think that the appellees' interests (and those of the public) will be better served by our deciding this appeal in their favor now than they would be by a decision disqualifying Mr. Paschon from pursuing this appeal.
 
 
 31
 We note also that our decision on disqualification applies only to Mr. Paschon's representation of the appellants in this court in this appeal. We express no view on whether Mr. Paschon should be permitted to continue to represent the plaintiffs in the district court if and when the plaintiffs return to the district court to pursue their claims in Count III.
 
 
 32
 The appellees' Motion to Disqualify Counsel will be denied.
 
 III.
 
 33
 On the merits, we affirm the district court's decision, essentially for the same reasons set forth in the careful and thorough opinion of Judge Thompson. Hovsons, Inc. v. Secretary of the Interior, 519 F.Supp. 434 (D.N.J.1981).
 
 IV.
 
 34
 The judgment of the district court will be affirmed.
 
 
 35
 GARTH, Circuit Judge, concurring and dissenting:
 
 I.
 
 36
 At the time that this case was argued before us, I was satisfied that the district court's order of July 14, 1981 was not appealable. It was not appealable, in my view, because while the district court had rendered judgment on all but one of the claims presented, the fact that one claim remained unresolved because the district court had abstained from deciding it under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), was sufficient to deprive the entire order of finality for purposes of 28 U.S.C. § 1291. See Cotler v. Inter-County Orthopaedic Ass'n, 526 F.2d 537, 540 (3d Cir.1975); Frederick L. v. Thomas, 578 F.2d 513, 516 (3d Cir.1978). Further, the appeal had not been certified by the district court pursuant to Fed.R.Civ.P. 54(b), nor did it qualify for review under any other statutory or decisional authority.
 
 
 37
 Since this case was argued, however, the Supreme Court has intimated, in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., --- U.S. ----, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), that orders abstaining from exercise of jurisdiction under Pullman are final for purposes of appellate review. Thus, because the Pullman abstention portion of the July 14, 1981 order must be regarded as final for purposes of review if we accept the Supreme Court's intimation to that effect, the entire order in the present case would now be regarded as final.
 
 
 38
 It should be noted, however, that a Pullman abstention order was not directly in question in Cone, and thus that language in the Cone opinion dealing with the finality of Pullman abstention orders is arguably dictum. Further, the Supreme Court, as a historical matter, inaccurately characterized the holding in Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), the case which the Supreme Court regarded as having held that Pullman abstention orders were appealable.[1]
 
 
 39
 For these reasons, I am not as confident as is the majority that Cone must be read as overruling such decisions as that of this court in Cotler v. Inter-County Orthopaedic Ass'n, P.A., 526 F.2d 537, 540 (3d Cir.1975).[2] See Maj. op. at 1211.
 
 
 40
 Even though I continue to believe that the rationale accepted in Cotler is a sound and viable one, and I have doubts about the reach of the actual holdings in Cone and Idlewild, I am constrained to recognize the clear direction provided by the Supreme Court in Cone with respect to the appealability of Pullman abstention orders. I therefore agree with the majority--albeit with substantial misgivings[3]--that the July 14, 1981 order of the district court is properly before us for review. See Maj. op. at 1211.[4]
 
 II.
 
 41
 I do not agree, however, that we should rule on the disqualification motion presented to this court by the Secretary, and never presented to, addressed by, or ruled upon by, Judge Thompson in the district court. This motion is based on allegations that Paschon has violated Disciplinary Rules 9-101(B) and 5-105(B). We have before us, in connection with these allegations, flatly contradictory affidavits implicating the very core of the representation of Hovsons' by Paschon. In my opinion this motion raises serious factual questions appropriate only for a fact-finding court, in this instance, the district court.[5]
 
 
 42
 Thus it is highly inappropriate and unwise for this court to resolve these disputed questions of fact by engaging in appellate fact finding. See Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Indeed, we have invariably subscribed to the proposition that "... it is not the proper role of this court to make findings of fact in the first instance ..." FTC v. British Oxygen Co., Ltd., 529 F.2d 196, 200 (3d Cir.1976). Because motions seeking to disqualify attorneys turn on the facts,[6] (as the majority concedes that this one does, see Maj. op. at 1212 & n. 4), I suggest that the Majority has exceeded its responsible and proper function by the manner in which it has reviewed the documents before us, and thereby effectively precluded the possibility of the district court finding facts that are essential to the proper disposition of the Secretary's motion.
 
 
 43
 Moreover, I believe that when a serious claim for disqualification is presented in a case that will not be ended by our disposition on appeal[7], and especially when the circumstances alleged in support of the disqualification motion permeate the trial as well as the appellate proceedings, it is inappropriate to resolve that issue and to limit its resolution, as the majority does, to the appellate proceedings. For, in the event that the Secretary pursues his motion before the district court, there might well emerge before that court facts, which, if they had been known to us, would have resulted in disqualification before the district court. The effect of our present ruling could only be to prevent consideration of those facts for the period during which this appeal has been prosecuted, surely an incongruous and unjust result.
 
 
 44
 Ultimately the third count of Hovsons' complaint may return to the district court for disposition, and in any case Paschon continues to represent plaintiff Hovsons' in a matter implicating the public interest. Under these circumstances, I do not believe that we should take it upon ourselves, without the benefit of a proper exploration of the facts involved and of a resolution of the conflicting allegations, to conclude that, even if violations of the Code of Professional Ethics had occurred, disqualification would be inappropriate.[8]
 
 
 45
 For myself, I would not have come to any conclusion with respect to the Secretary's motion, nor would I have found or assumed facts from disputed contentions in the parties' affidavits. Rather, I would have left the matter of Mr. Paschon's disqualification to the district court on remand.
 
 III.
 
 46
 I, therefore, respectfully dissent from the judgment reached by the majority of this court, but only insofar as it denies the Secretary's motion for disqualification of Hovsons' counsel.
 
 
 
 *
 Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The Court made clear the continuing validity and scope of Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962) and, in a footnote, pointed out that "Idlewild's reasoning is limited to cases where (under Colorado River [Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ], abstention, or a closely similar doctrine) the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum.... We hold only that a stay order is final when the sole purpose and effect of the stay is precisely to surrender jurisdiction of a federal suit to a state court." --- U.S. at p. ---- n. 11, 103 S.Ct. at p. 934 n. 11
 
 
 [2]
 The Secretary was also required by 16 U.S.C. § 471i(g)(2) to consider the adequacy of public participation in the formulation of the CMP; the adequacy of the state's proposals for implementation of the CMP; federal representation in implementation of the CMP; the sufficiency of the proposed use of police power in the plan; natural, ecological, agricultural, scenic, cultural, recreational and economic factors; and the continuing oversight of the plan by the Governor of New Jersey
 
 
 [3]
 The Secretary's motion was made for the first time in this court. The motion alleges, and we have no reason to doubt, that the United States Attorney's Office did not become aware of Mr. Paschon's work with the New Jersey Air National Guard until after the filing of the present appeal
 
 
 [4]
 There is a substantial dispute as to whether this matter was one in which Mr. Paschon "had substantial responsibility while he was a public employee" within the meaning of DR 9-101(B). With respect to DR 5-105(B), it is far from clear whether Mr. Paschon's representation of these appellants (arguing that the defense interests of the nation were not adequately safeguarded by the Secretary in approving the CMP) has been, or could be, adversely affected by his relationship with the Air National Guard. So far as the record discloses, he has never been obliged to support the CMP or to urge that it does adequately accommodate the defense interests of the nation. In any event, the appellees are not in a position to preclude waiver of disqualification by the respective clients
 
 
 [1]
 In Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), the district court had stayed an action, retaining jurisdiction, in order to give the state courts a chance to pass on the constitutional issues presented. 370 U.S. at 714, 82 S.Ct. at 1295. In a footnote the Court stated that
 "[t]he Court of Appeals properly rejected the argument that the order of the District Court 'was not final and hence unappealable under 28 U.S.C. §§ 1291, 1292,' pointing out that '[a]ppellant was effectively out of court.' [Idlewild Liquor Corp. v. Rohan ] 289 F.2d at 428 [2nd Cir.1961]"
 370 U.S. at 715 n. 2, 82 S.Ct. at 1296 n. 2.
 The Court, in this footnote, refers to both § 1291 and § 1292, making it possible that the Court understood jurisdiction to be based on 28 U.S.C. § 1292. Further, the reference to § 1292 occurs within a quotation and hence must be understood as the language of the Court of Appeals. The quoted section of the Court of Appeals' opinion is also unclear about the theory of jurisdiction:
 Appellees' argument that this order was not final and hence unappealable under 28 U.S.C. §§ 1291, 1292 is not well taken. No parallel state actions were pending and there was no state adjudication to await. There was nothing left to be done in the federal courts because the action there had been for all intents and purposes concluded. Appellant was effectively out of court--any prayer for injunctive relief was indefinitely postponed under these circumstances. There is no bar on this ground to appealability. See Glen Oaks Utilities, Inc. v. City of Houston, 5 Cir., 1960, 280 F.2d 330.
 289 F.2d at 428.
 However, it is quite evident that at the place cited by the Court of Appeals, the Glen Oaks Utilities court was dealing solely with the question of appealability under § 1292, and not with the question of finality under § 1291.
 Although the Court in Idlewild did use the term "final", a term which would seem to be applicable to § 1291 and not to § 1292, the passage quoted from the Court of Appeals treats "final" as a characterization to be applied to determinations with respect to injunctive relief, and the Court's quotation of this passage simply carried forward this same confusion. Further, although the Court did not itself engage in the inquiry prescribed by Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955), as to whether the appeal allowed the litigants "to effectively challenge interlocutory orders of serious, perhaps irreparable consequence," id., the Court's short per curiam in effect approves the Court of Appeals' discussion of the Baltimore Contractors inquiry. The plaintiff in Idlewild had obviously been threatened with irreparable injury, insofar as the New York Liquor Commission was preventing him from carrying on his business altogether. The Court of Appeals' discussion explicitly deals with the question of whether any other effectual challenge was available to the plaintiff. Thus, the Court simply assumed, without expressly stating, that the Baltimore Contractors requirements had been satisfied.
 Accordingly, there can be little question that the best historical understanding of the Idlewild case was that jurisdiction there was based on § 1292. Indeed, this court explicitly accepted the § 1292 reading of Idlewild, which I believe to be correct, when it considered the appealability of a Pullman abstention order in Frederick L. v. Thomas, 578 F.2d 513, 515-16 (3d Cir.1978).
 
 
 [2]
 In Cotler v. Inter County Orthopaedic Ass'n, P.A., 526 F.2d 537 (3d Cir.1975), two lawsuits had been commenced in New Jersey state courts, concerning the corporate relations of three doctors who had practiced together as members of a professional corporation. One suit had attempted to remove Cotler as officer and director of the corporation, the other, initiated by Cotler, had sought to restrain other members of the corporation from wasting assets. Subsequently, Cotler filed a suit in federal district court charging the same defendants with securities violations, and adding pendant state claims largely identical to those raised in state court. The district court stayed the federal proceedings until determination of the state court proceedings
 This court noted that jurisdiction of the securities violation claims was exclusive in the federal district court, and thus that "in the end the district court must take up the § 10(b) claim." Cotler, supra, 526 F.2d at 540. In these circumstances, the court held, Arny v. Philadelphia Transportation Co., 266 F.2d 869 (3d Cir.1959) governed and required the conclusion that the stay was not a final order.
 Although the Cotler court's reliance on Arny cannot now be sustained, insofar as Cone plainly rejects the rationale of Arny, the Cotler decision had extended Arny to different circumstances and offered a separate rationale, namely, that the claim on which the district court had abstained, a federal securities claim, was a claim that could not be disposed of by the state court. Thus, in Cotler the res judicata effect that was the crucial concern of the Court in Cone was not implicated. In Cone the Supreme Court specifically recognized that "a stay of the [Cone ] federal suit pending resolution of the [Cone ] state suit meant that there would be no further litigation in the federal forum; the state court's judgment on the issue would be res judicata." Cone, supra, --- U.S. at ----, 103 S.Ct. at 934 (footnote omitted). In Cotler, by contrast, a return to the federal forum was required.
 In the present case also, the filing of a reservation pursuant to England v. Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) can protect the federal claim from res judicata effect, and require a return to the federal forum. It seems to me therefore that Cotler is more analogous to the present case than is Cone, and given the circumstance that a return to the federal forum is foreseen, Cotler retains its viability. Cf. Frederick L. v. Thomas, supra, 578 F.2d at 516.
 
 
 [3]
 In light of the Supreme Court's ever-mounting appellate docket, and the Court's concern with managing its calendar and the calendars of the Courts of Appeal, permitting appellate review of abstention orders seems to me a highly questionable policy. This is particularly so in light of the fact that an appeal of an abstention order will almost invariably be followed by still another appeal when the district court finally rules on the merits. Cf. Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 178, 75 S.Ct. 249, 250, 99 L.Ed. 233 (1955) (basic policy governing allowance of appeals is to have a single appeal in each case)
 
 
 [4]
 I also agree with the majority's holding on the merits of the July 14, 1981 order, affirming the district court for the reasons stated in the well reasoned opinion of Judge Thompson. See Maj. op. at 1214
 
 
 [5]
 There are disputes as to whether (1) Mr. Paschon "had substantial responsibility while he was a public employee" with respect to the matter of the impact of the Pinelands proposal on the acquisition of land by the New Jersey Air National Guard for its gunnery range, see DR 9-101(B) of the ABA Code of Professional Responsibility, (2) whether information gained by Mr. Paschon "in his official capacity has actually fueled his allegations regarding the Secretary of the Interior's consideration of the defense mission issue," see Certification in Support of Disqualification p 16, (3) whether the State of New Jersey and the United States are present or former "clients" of Mr. Paschon, see Canon 4 and DR 5-105 of the Code, and (4) whether matters embraced within the present action are "substantially related" to matters on which Mr. Paschon represented the State of New Jersey or the United States, see Canon 4 of the Code; Richardson v. Hamilton Int'l Corp., 469 F.2d 1382, 1385 (3d Cir.1972)
 
 
 [6]
 Richardson v. Hamilton Int'l Corp., supra, 469 F.2d at 1385 (3d Cir.1972); Kreda v. Rush, 550 F.2d 888, 889 (3d Cir.1977)
 
 
 [7]
 It should be remembered that the district court terminated the action only administratively, "without prejudice to the right of the parties to reopen the proceedings for good cause shown for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation." App. 379a
 
 
 [8]
 The majority argues that, because Mr. Paschon's present client, appellant Hovsons, lacks standing to challenge the Secretary's consideration of the national defense mission, the Secretary is not harmed by Mr. Paschon's representation of Hovsons. This is because any such challenge "is effectively a nullity," Maj. op. at 1213, so that Mr. Paschon is unable, either by use of confidences formerly gained, or by influence formerly exerted over consideration of the defense mission of the United States, to work the harm intended to be prevented by the Code. This argument overlooks the concern of the Code with "the appearance of impropriety" generated by having former government officials engage in an attempt to overturn decisions in which they have played a role. See United States v. Miller, 624 F.2d 1198, 1202 (3d Cir.1980)
 The majority also argues that the lack of merit in Hovsons' claims, and the tendency of pending litigation to impede the Pinelands project militate in favor of resolving the disqualification motion now. I note, first, that this litigation is by no means over. Second, I note that the majority's resolution of the motion for purposes of this appeal leaves the question of disqualification largely unresolved, both for the period prior to this appeal, and for any subsequent period. Most importantly, however, this argument is unconvincing because, as the majority itself notes, the district court, on remand, would have "wide discretion in framing its sanctions to be just and fair to all parties involved." United States v. Miller, supra, 624 F.2d at 1201 ( quoting IBM v. Levin, 579 F.2d 271, 279 (3d Cir.1978)).